Saad Ahmed for the petitioner, and Love Machoni, my counsel, also for the petitioner. Your Honors, there's only one issue that this Court must go forward with to resolve this case today. That issue is whether the immigration judge uttered, as a matter of law, in requiring the petitioner to corroborate his credible testimony in support of his asylum, withholding of removal, and CAD applications. The law in this circuit, as it existed prior to the REAL-ID Act in 2005, did not require an asylum applicant to corroborate his credible testimony. And even if corroboration was required, it had to be reasonable under all circumstances. In this case, the immigration judge uttered on both grounds. She required the petitioner to corroborate his testimony that was credible, and she also did not make a determination whether such corroboration was reasonable under all circumstances. In this case, the petitioner, a native of Georgia, applied asylum in the United States. But let me ask you this. Assuming that she credited the testimony and didn't require corroboration, there we would assume there was a reasonably held subjective fear of future persecution. But how would that affect objective fear of persecution in the future? Right. Your Honor, in this case, corroboration was not – I mean, the judge did not say that she – that the petitioner failed to corroborate and that's why his claim – that's why he was not credible. She said that his failure to corroborate – because he failed to corroborate, he failed to meet his burden of proof for asylum. Not necessarily that his fear of returning to Georgia was not reasonable under the circumstances. She said – basically, she said that he failed to – failed to meet his burden of proof. However, if she found his testimony to be credible, if she found his testimony to be credible, that meant that he was put on – on – he was blacklisted, he received death threats, he – I mean, several – several of his comrades were murdered or forced to flee the country, I think if she – if she fully credited that testimony and the testimony of his – his expert who corroborated as well as one of his comrades who actually got asylum in the United States on that ground, then she would – On the ground that he had received a death threat? No. His colleague was a member of the same organization that the petitioner was and received asylum in the United States on the ground that the pro-nationalists in Georgia targeted him for persecution. Okay. But there's been a regime change, right? Right. In 1991, it was changed. However, the expert testified in court that the change in regime did not affect the respondents' fear of – of returning because the power structure did not – I mean, it had not changed. And petitioner argued that Georgia has a history of ethnic nationalism. In fact, there is evidence to support that. Even today, the Soviet Union – I mean, excuse me, the Russian Army in 2008 actually went into Georgia to suppress ethnic nationalism in Georgia. So the fear of returning that respondent faces today is not affected by the change in regime. Mr. Shevardnadze, the current president of Georgia, has been target of numerous assassination attempts which are not affected by the fact that now he's the president. So respondents – excuse me, the petitioner still has a reasonable fear of returning based on that. Your Honor, also, this court, when it determines whether an asylum applicant's fear of returning to his or her country is rebutted by changed country conditions, the immigration judge should make a specific finding as to that issue, meaning that immigration judge cannot just make a boilerplate finding that, well, now there's a regime change, therefore, the asylum applicant's fear of returning is not reasonable. In this case, the immigration judge did not take into account how the change in government would make the petitioner's return to Georgia a risk. What do we do with the State Department letter? Your Honor, even the State Department letter was extremely general in nature. State Department said that it did not specifically say whether someone who was targeted in the past by the pro-nationalists in Georgia, blacklisted by the pro-nationalists in Georgia, would face – would have at least a 1 in 10 chance, which is actually required for asylum, of returning. And therefore, Your Honor, we believe that the immigration judge erred on that account as well. What are you asking us to do? Your Honor, we would require – we would ask the Court to remand this case back for an immigration judge to determine in the first instance, number one, whether based on the change in regimes in Georgia, whether the petitioner's – You mean today – back in the regimes in 1991 or today or what – Your Honor, back in 91, because I believe it's the same regime today, whether under the specific – based on the specific facts in this case, a reasonable applicant would fear returning back. As I mentioned earlier, corroboration was required in this case, which violated the law of this circuit as well as the law of the rest of the circuits as well, because as the law existed at the time, corroboration was not required. Under the REAL ID Act, it is required. And she also did not take into account reasonable explanations that the petitioner gave that he tried to obtain the death certificates of his comrades who were murdered by the nationalists there. And also, the judge did not take that into account. So – and lastly, as I mentioned, that her claim that the petitioner did not or does not have a reasonable fear of returning back to Georgia. If you went – if we were to agree with you and remand this case back to the BIA, is there anything that you would attempt to do to supplement the record on country conditions in Georgia today? Yes, Your Honor, we would. As I mentioned before, there have been major events in Georgia since 2008 that also show that the ethnic nationalism in Georgia is well underway. In fact, the reason why the Russian Army went into Georgia, because they said that if they did not intervene, there could be a possibility of a civil war, very much like the way we had in the Balkans. And one thing I'd like to point out, and the expert as well as the petitioner's witness also testified to, is that Georgia has had a history of ethnic violence and nationalism. In fact, Georgia and Ukraine were two republics where, during World War II, the Soviet regime was well aware that if the German Army was able to win over the population, that the tide of the war would turn. So they took severe measures in those two republics. All right. Do you want to save the rest of your time for rebuttal? Yes, Your Honor. Good morning. Ayla Dice, Assistant U.S. Attorney for the Respondent. I think it's important to take a moment and restate the standard of review that this Court is looking at, as given to us by the Supreme Court in Elias Zacharias, which is that the Court is looking at the agency's decision to deny asylum and withholding a removal based on the entire record. I have the record behind me. And only would reverse if there's insufficient evidence in the record. We've all looked at the record. Yes. And that only if there's insufficient evidence would you remand for the reconsideration. So are you saying that the judge in this case,  in the hearing here there was no finding of no past persecution, and then the judge turned to whether there was a, which Judge Rossani was alluding to, whether there was a well-funded future persecution and stated that the lack of corroborating evidence undermined the claims that were made. All of the claims occurred after he had already left. Wasn't she required to take his testimony? Once she found him credible, wasn't she required to credit all of his testimony? It's the government's position that correct under LADA, an immigration judge should not ask for corroborating evidence once found credible. However, in this case, any error made by the immigration judge would be harmless because the immigration judge went on to make a finding after looking at the Department of State report and the whole record, including Ms. Parker, who is Petitioner's witness, that there were changed country conditions and that Petitioner had not established that he would be, had a well-funded future persecution. Do we look at the changed country conditions ruling at the time of the IJ's decision, or do we look at changed country conditions as of the present time? Thank you, Judge Hugg, for bringing that up, because that's something I would like to correct that Petitioner's counsel misspoke. Again, the court is looking at the administrative record as it stands now, and unfortunately this is quite an old case. And the IJ hearing was in 1999. The Department of State and the articles were all sort of spanning the late 1990s. What Petitioner would not be able to supplement the record to discuss changed country conditions as they are today. The court is only looking at the conditions as they were in the record. If Petitioner... If we're going to go back to the BIA, though, he could ask leave to supplement the record to introduce new evidence about what conditions are like in the court today. No, Your Honor. He could ask for leave to remand. The proper venue... He could ask the BIA if we remand it to the BIA. What Petitioner can do, because there are no temporal or numerical limits on a motion to reopen for changed country conditions, would be to file a motion to reopen with the BIA presenting new evidence of changed country conditions. Let me ask you this. If we were to say that there was legal error here and it had to go back, are you telling me that once it got back to the BIA, he couldn't ask to supplement the record before the BIA? If the court were to remand, it would have to be remanding based on country conditions back in as they were in the administrative record. You remanded. That's correct. But when it gets back there, following our remand order, are you telling me that he couldn't ask, that the Petitioner could not ask to supplement the record at that time? That's not usually how proceedings go. Again, the proper venue for supplementing the record would be in the context of a motion to reopen based on changed country conditions. The record... Well, could he ask, if we remand it back to the BIA and say, redo this, give him a new hearing, could he ask to supplement the record at that time? That would entail, Your Honor, making a determination on the country conditions as they are today and finding legal error as they are today. Why is that? I don't understand. I don't understand your response. Because... Just look at the record. Just the record that we have. Yes. And we conclude that there was legal error. That is, the I.J. improperly considered required corroborative evidence, and it was legal error, and it affected the whole decision. If we remand it, we grant the petition and send it back in that State, just like that, you're telling me that the only way he's going to be able to supplement the record is to file another motion to reopen in the --" before the BIA. It makes no sense to me. If Your Honor is --" would hold that there was legal error based on the record that was before the immigration judge, although it's the government's position that I'm more than happy to go through and show that there... I understand that. There is no legal error in the context of the whole record. I understand that your position is that there was no legal error. Yes. And so what if we disagree with you? That there is legal error. Yes. If there are... Assume legal error. Yes. Then you would be remanding to correct the legal error, which I'm understanding you to say was that she did not fully look at the change country conditions and did not improperly ask for corroborating evidence. And so that would again be in the context of the hearing as they were many years ago. One other thing I wanted to point out is that the petitioner does have voluntary departure, and even though it's been many years, the voluntary departure would be told, and it still has the benefit of voluntary departure. In summary, unless the Court has other questions. I just wanted to ask a question about the failure to corroborate. Your view of this is that even if there was legal error, that it was harmless. And is that because of the change country conditions or because of something else? It is because the immigration judge went on from there after saying that the application was undermined because of the lack of the transcripts and certain documentary evidence. The immigration judge went on to note that there is in the record Department of State articles and other evidence in the record that show that the country conditions, there was a change in regime, and actually it's. So your answer was yes to the second part of my question, that it was harmless error because of change country conditions. It would have come out the same. Yes. Okay. And as a whole, the immigration judge properly found that the petitioner did not establish eligibility for asylum. Do you have any other questions? No, I don't. Thank you very much. The petition for review should be denied. Thank you, Your Honor. Your Honor, I'd just like to point out, and I believe Judge Pais, it was your opinion recently, the BIA cannot engage in fact-finding based on change country conditions. If more fact-finding is required, the BIA is required to remand the case back to the immigration court. Well, it's my understanding if you were to go back, if we were to remand you back, remand back to the BIA just on this record and just say there was legal interest in it back, either side, the government could ask to supplement the record with change country conditions or the petitioner could. Yes, we could. Isn't that right? And the BIA could remand it back to the IJ to take additional evidence. Isn't that correct? That's correct. Isn't that correct, Your Honor? And oftentimes, if the appeal takes a very long time, which was the case many years ago, the BIA routinely remanded the case based on change country conditions sua sponte. If I remember correctly, when we were reversed in Ventura for not remanding it back on an issue that the BIA hadn't decided, the Supreme Court made it clear that because the BIA is in the best position to evaluate change country conditions in this scheme, that the BIA, when it got back, the BIA and the agency could take another look at change country conditions. That's correct, Your Honor. And that's what we request for it to do today. Let me ask you a question. Didn't he live, after his last episode with the authorities, didn't he live rather peacefully for about eight years in Georgia? No, Your Honor. He actually, he came to the United States. The threats against him, they occurred after he came to the United States. So his claim for persecution is based on well-founded fear of future harm, future persecution, not false persecution. The threats that happened after he left. Yes, Your Honor. The threats after, which his, which he testified to credibly, as well as the testimony of his brother, as well as affidavit from his parents. So your view is that finding of the immigration judge is irrelevant? Yes. Okay. Thank you, Your Honor. Thank you. The matter is submitted.
judges: Restani, Hug, Paez